USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/8/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL PENADES,

                  Plaintiff,

-against-

THE REPUBLIC OF ECUADOR,

                  Defendant.

18 Civ. 4493 (AT) (RWL)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff *pro se*, Daniel Penades, brings this action against Defendant, the Republic of Ecuador, asserting claims that arise out of Defendant's alleged default on indentures for bonds held by Plaintiff. Am. Compl., ECF No. 21. Defendant moves to dismiss for failure to state a claim based on res judicata under Federal Rule of Civil Procedure 12(b)(6). ECF No. 23. For the reasons stated below, Defendant's motion is GRANTED.

## BACKGROUND

    The following facts are taken from the amended complaint, which the Court accepts as true for purposes of this motion. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This is the third time in five years that Plaintiff has sued Defendant in this District on the same bonds and their indentures: specifically, the (1) 2030 Step-Up Global Bonds (the "2030 Bonds") and the Indenture Relating to U.S. Dollar Denominated Step-Up Global Bonds Due 2030 (the "2030 Bond Indenture"), which governs the 2030 Bonds, and (2) the Global Bonds Due 2012 (the "2012 Bonds") and the Indenture Relating to 12% U.S. Denominated Global Bonds Due 2012 (the "2012 Bond Indenture"), which governs the 2012 Bonds. Am. Compl. ¶ 14; Compl. ¶¶ 3–4, ECF No. 2.[1]

---

[1] "Although the Court is typically confined to the allegations contained within the four corners of the complaint, when analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in a pro se litigant's opposition papers and other court filings." *Rodriguez v. Rodriguez*, No. 10 Civ. 891, 2013 WL 4779639, at

I.   The First Action

On August 9, 2013, Plaintiff, through counsel, filed a complaint alleging that he owned $35,000 in the 2012 Bonds and $348,000 in the 2030 Bonds on which Defendant allegedly had defaulted, and demanding judgment in the amount of $383,000, plus interest, additional costs, and attorney's fees (the "First Action"). *Penades v. Republic of Ecuador*, No. 13 Civ. 5562 (S.D.N.Y. Aug. 9, 2013) ("*Penades I*"), ECF No. 1 ¶¶ 6, 10.[2] On January 23, 2014, Plaintiff voluntarily dismissed the First Action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). *Id.*, ECF No. 13.

II.   The Second Action

A year later, on January 30, 2015, Plaintiff, this time proceeding *pro se*, filed a second lawsuit in this District against Defendant (the "Second Action"). *See Penades v. Republic of Ecuador*, No. 15 Civ. 725, 2016 WL 5793412 (S.D.N.Y. Sept. 30, 2016), *aff'd*, 690 F. App'x 733 (2d Cir. 2017) ("*Penades II*"). Although Plaintiff did not sue on the 2012 Bonds in the Second Action, stating that they had "reached the Statute of Limitation[s], in 2014," *Penades II* Compl. ¶ 3, *Penades II*, ECF No. 2, the Second Action complaint contained allegations regarding how the 2012 Bonds and 2012 Bond Indenture had been breached, *id.* ¶¶ 6–7, 13, 49. In the Second Action, however, Plaintiff only asserted claims on the 2030 Bonds and the 2030 Bond Indenture. *See, e.g.*, *id.* ¶¶ 2–3, 5.

---

*1 (S.D.N.Y. July 8, 2013) (internal quotation marks and citations omitted); *see also Torrico v. Int'l Bus. Machs. Corp.*, 213 F. Supp. 2d 390, 399 n.4 (S.D.N.Y. 2002) ("The Court [] may consider factual allegations contained in [the plaintiff's] other court filings." (internal quotation marks and citation omitted) (alteration in original)). The Court, therefore, considers allegations in the original complaint that "are consistent with the allegations of the [amended] complaint." *Id.*

[2] "In considering a res judicata defense, a court may judicially notice prior pleadings, orders, judgments, and other items appearing in the court records of prior litigation that are related to the case before the [c]ourt." *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005); *see also Perry v. Estates of Byrd*, No. 13 Civ. 1555, 2014 WL 2998542, at *3 (S.D.N.Y. July 3, 2014) ("[T]his Court can grant a motion [to] dismiss for failure to state a claim on the affirmative defense of res judicata based on judicial notice of the prior orders and judgments.").

On September 30, 2016, the Honorable Richard J. Sullivan granted Defendant's motion to dismiss the Second Action under Rule 12(b)(6). *Penades II*, 2016 WL 5793412. The central issue in Defendant's motion to dismiss was whether, under the 2030 Bond Indenture's provisions concerning an individual bondholder's right to institute suit for breach of the indenture, Plaintiff could maintain his claims prior to the 2030 Bonds' maturity. Judge Sullivan ruled, on the basis of an in-depth analysis of the text of the 2030 Bond Indenture, that it "unambiguously authorizes suit only if and when Defendant fails to timely fulfill its obligations on the maturity date, which is not until August 15, 2030." *Id.* at *5. Judge Sullivan held that, because the 2030 Bond Indenture "does not provide a basis for Plaintiff to sue before the maturity of the [2030] Bonds in 2030 . . . Plaintiff fails to state a claim upon which relief can be granted." *Id.*

Plaintiff then appealed Judge Sullivan's decision, arguing that he could pursue his unpaid interest and other claims under Section 4.6 of the 2030 Bond Indenture[3] prior to the 2030 maturity date. *See Penades v. Republic of Ecuador*, 690 F. App'x 733, 734 (2d Cir. 2017). On May 17, 2017, the Second Circuit affirmed Judge Sullivan's decision, holding that "the [2030 Bond] Indenture only permits an individual bondholder to sue once Ecuador's obligations under the Indenture are due and payable in full, which will not be the case until August 15, 2030." *Id.* at 735. The Second Circuit further concluded that "[Plaintiff's] suit, brought well before that date, was therefore properly dismissed by the district court." *Id.*

---

[3] Section 4.6 of the 2030 Bond Indenture states, "Notwithstanding any other provision in this Indenture, each Bondholder shall have the right, which is absolute and unconditional, to receive payment of the principal of and interest on (including Additional Amounts) its Bonds on the stated maturity expressed in such Bonds and to institute suit for the enforcement of any such payment, and such right shall not be impaired without the consent of such Bondholder." Am. Compl. ¶ 20.

### III. The Third Action

Undeterred, Plaintiff filed this *pro se* action on May 21, 2018. ECF No. 2. He sues on the 2012 Bonds and the 2030 Bonds and their indentures, seeking damages for Defendant's alleged breaches of the 2012 Bond Indenture and 2030 Bond Indenture. *See* Am. Compl. ¶¶ 1–3, 15–16, 26–28, 59, 68–70, and Prayer for Relief at 12. Plaintiff also alleges in this action that he is aggrieved because, in the Second Action, Judge Sullivan did not allow him to amend his complaint. *Id.* ¶¶ 54–58.

Plaintiff's allegations, claims, and requests for relief regarding the 2030 Bonds and 2030 Bond Indenture here are identical to those in the Second Action. Plaintiff alleged in the Second Action that he owns the same $455,000 in 2030 Bonds on which, along with alleged breaches of the 2030 Bond Indenture, he now partially premises this third action. *Compare Penades II* Compl. ¶¶ 3, 37, *with* Am. Compl. ¶¶ 14, 16, 65–70, 74–79. In both the Second Action and here, Plaintiff acknowledges that the 2030 Bonds have not matured and do not mature until August 15, 2030. *Compare Penades II* Compl. ¶ 41, *with* Am. Compl. ¶ 20, 33. Nevertheless, Plaintiff contends that he can now sue Defendant on all his claims, including for the alleged $455,000 principal amount of his 2030 Bonds. *See, e.g.*, Am. Compl. ¶¶ 32–34, 59.

In the Second Action, Plaintiff asserted the same claims regarding the 2030 Bonds that he asserts now—i.e., that Defendant has failed to make interest payments on the 2030 Bonds in violation of the 2030 Bond Indenture, and has failed to observe the indenture's *pari passu* provisions by issuing and paying interest on new bonds but not on the 2030 Bonds. *Compare Penades II* Compl. ¶¶ 2, 5, 27, 45–61, 69, *with* Am. Compl. ¶¶ 2–3, 16, 18, 68–70, 76–79. Plaintiff also sought the same relief in the Second Action that he seeks now as to the 2030 Bonds: accrued and unpaid interest at the default interest rate of 1% per annum above the 10%

interest rate provided for in the 2030 Bond Indenture, "interest on interest," a Principal Reinstatement in the amount of 10% of the value of the 2030 Bonds, and an order specifically enforcing the 2030 Bond Indenture's *pari passu* provisions. *Compare Penades II* Compl. ¶¶ 29–30, 40, 51, 70–72, 79–80, 82–83, 94–98, 103, and Prayer for Relief at 13, *with* Am. Compl. ¶¶ 16, 18–19, 59–62, 68–70, 75, and Prayer for Relief at 12.

With respect to the 2012 Bonds, Plaintiff alleges that he "acquired and owns" 2012 Bonds in the "principal amount of $50,000," but that due to a 2005 40.8% amortization of those Bonds, they now "have a real value of $20,400 that are claimed in this action." *Id.* ¶ 14. Plaintiff seeks the return of the "full principal" of his 2012 Bonds, and other relief on the 2012 Bonds and 2012 Bond Indenture that is virtually identical to his requests on the 2030 Bonds and 2030 Bond Indenture: unpaid interest, "interest on interest" at the default interest rate of 1% "above the corresponding [interest] rate," and an order specifically enforcing the 2012 Bond Indenture's *pari passu* provisions. *Id.* ¶¶ 14, 27, 68–70, 75–79, and Prayer for Relief at 12.

## DISCUSSION

### I. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *See ATSI Commc'ns*, 493 F.3d at 98. A plaintiff is not required to provide "detailed factual allegations," but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

*Pro se* plaintiffs receive special solicitude from courts. Courts must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted). That said, pleadings cannot survive by making "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). A court should reject "threadbare recitals" of the elements of a cause of action "supported by mere conclusory statements," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), and "bald assertions" unsupported by details which are sufficient to meet the minimum pleading requirements for a cause of action, *Lawtone-Bowles v. N.Y. City Hous. Auth.*, No. 13 Civ. 1434, 2014 WL 705272, at *2–3 (S.D.N.Y. Feb. 20, 2014).

Generally, on a motion to dismiss, the Court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Additionally, when the Court is deciding a motion to dismiss a *pro se* complaint, it can consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Aikens v. Royce*, No. 14 Civ. 663, 2015 WL 7758892, at *4 (S.D.N.Y. Dec. 1, 2015) (internal quotation marks and citation omitted).

Finally, "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks and citation omitted).

II.     Analysis

Defendant argues that the complaint should be dismissed pursuant to Rule 12(b)(6) on res judicata grounds because Plaintiff's claims are barred by the Second Action, which resulted in a judgment on the merits that was affirmed by the Second Circuit. Def. Mem. at 10, ECF No. 24. The Court agrees.

"[I]t is well settled that a court may dismiss a claim on res judicata or collateral estoppel grounds on a Rule 12(b)(6) motion." *Rountree v. US Bank NA*, No. 15 Civ. 9018, 2017 WL 31405, at *7 (S.D.N.Y. Jan. 3, 2017) (internal quotation marks and citation omitted) (alteration in original); *see also Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (affirming a Rule 12(b)(6) dismissal on res judicata grounds). The doctrine of res judicata holds that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Courts "apply federal law in determining the preclusive effect of a federal judgment." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Under the federal rules of res judicata, a subsequent lawsuit will be barred where the defendant can show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000).

There is no doubt here that the first two prongs are met. The Second Action involved the same parties as this case—Plaintiff Penades sued Defendant the Republic of Ecuador in both actions.[4] Additionally, the Second Action resulted in a dismissal of Plaintiff's complaint in that

---

[4] Indeed, Plaintiff concedes that this element has been satisfied. *See* Pl. Opp. at 6 ("[Plaintiff] concede[s] that [Defendant] has established this first requirement.").

7

action under Rule 12(b)(6), *see Penades II*, ECF Nos. 57 (Opinion and Order), 58 (Judgment), which constitutes a judgment on the merits. *See, e.g.*, *Teltronics Servs., Inc. v. LM Ericsson Telecomm., Inc.*, 642 F.2d 31, 34 (2d Cir. 1981) (Rule 12(b)(6) judgments "are on the merits, with res judicata effects"); *see also Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399 n.3 (1981) (same); *Jiggetts v. Local 32BJ, SEIU*, No. 11 Civ. 4667, 2012 WL 2921857, at *1 (S.D.N.Y. July 17, 2012) (stating that a previous grant of a "motion to dismiss the complaint in [an earlier filed action] constituted an adjudication on the merits").

Moreover, the third prong is satisfied because the claims asserted in this action were raised, or could have been raised, in the Second Action. Indeed, Plaintiff's claims in this case are based on the same transaction or series of connected transactions as in the Second Action— the 2012 Bonds and the 2030 Bonds, and their indentures.[5] "Whether claims asserted in a prior action are similar enough to preclude claims asserted in a subsequent action under the third prong of [the res judicata] test depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Mahmood v. Research in Motion Ltd.*, 905 F. Supp. 2d 498, 502 (S.D.N.Y. 2012), *aff'd*, 515 F. App'x 891 (Fed. Cir. 2013).

A. 2030 Bonds

With respect to Plaintiff's claims on the 2030 Bonds and 2030 Bond Indenture, as described above, they are identical to those claims that he raised in the Second Action. *Compare*

---

[5] The Court already acknowledged, *sua sponte*, that this action is "similar" to the Second Action, when it accepted this case as "similar." *See* 6/29/2018 ECF Entry ("CASE ACCEPTED AS SIMILAR. Create association to 1:15-cv-00725-RJS"). Under Local Civil Rule 13(a)(1) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, that designation means that "(A) the actions concern the same or substantially similar parties, property, transactions or events; (B) there is substantial factual overlap; (C) the parties could be subjected to conflicting orders; and (D) whether absent a determination of relatedness there would be a substantial duplication of effort and expense, delay, or undue burden on the Court, parties or witnesses."

8

*Penades II* Compl. ¶¶ 76–104, *with* Am. Compl. ¶¶ 64–80. In both actions, Plaintiff claims that Defendant has failed to make interest payments on the 2030 Bonds in violation of the 2030 Bond Indenture, and has failed to observe the indenture's *pari passu* provisions by issuing and paying interest on new bonds but not on the 2030 Bonds. *Compare Penades II* Compl. ¶¶ 2, 5, 27, 45–61, 69, *with* Am. Compl. ¶¶ 2–3, 16, 18, 68–70, 76–79. Indeed, the fact that Plaintiff alleges in his current complaint that Judge Sullivan erred procedurally in the Second Action, by not allowing Plaintiff to file an amended complaint, illustrates that he is seeking a do-over of that prior action. *See* Am. Compl. ¶¶ 52–57 ("During the [Second Action] [Plaintiff] asked 2 times for an Amended Complaint if the case was dismissed under section 4.6 of the 2030 Indenture."). He is not permitted to do so. The doctrine of res judicata is not "a mere matter of practice or procedure inherited from a more technical time than ours," but rather "a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts." *Federated Dep't Stores*, 452 U.S. at 401 (internal quotation marks and citation omitted).

Plaintiff contends that res judicata does not bar his claims based on the 2030 Bonds because he is now suing under a different section of the 2030 Bond Indenture, Section 4.5, and the Second Action was only based on Section 4.6 of the 2030 Bond Indenture.[6] *See* Pl. Opp. at 10, ECF No. 25. Plaintiff, however, did attempt to raise arguments with respect to Section 4.5 on appeal and the Second Circuit rejected this argument as unpersuasive and improperly raised:

---

[6] Plaintiff also identifies a "new event[] on [the] 2030 Bonds"—that is, that another 2030 Bond holder, GMO Trust, settled a suit against Defendant after Plaintiff filed the Second Action. Pl. Opp. at 10. However, GMO Trust's lawsuit was filed in this District on December 12, 2014, before Plaintiff filed his complaint in the Second Action on January 30, 2015. *See GMO Trust v. Republic of Ecuador*, No. 14 Civ. 9844 (S.D.N.Y. Dec. 12, 2014). Plaintiff, however, never mentioned the GMO Trust lawsuit in his Second Action complaint. Moreover, the GMO Trust action was voluntarily dismissed on March 23, 2015, before Judge Sullivan issued his decision in the Second Action, yet Plaintiff did not move or otherwise seek leave to file an amended complaint in the Second Action on account of the GMO Trust lawsuit or its settlement.

9

"[Plaintiff] did not provide any persuasive grounds in the district court in support of the contention that he has satisfied the conditions of Section 4.5, and we decline to consider arguments he makes to the contrary that are raised for the first time on appeal." *Penades*, 690 F. App'x at 734 n.1.

As a result, Plaintiff's claims in this action on the 2030 Bonds are barred by res judicata, which "not only bars parties from relitigating the same cause of action, but also prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was raised." *Harborside Refrigerated Servs., Inc. v. Vogel*, 959 F.2d 368, 372 (2d Cir. 1992) (internal quotation marks and citation omitted). "If a valid and final judgment has been entered on the merits of a case, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to *all or any part of the transaction, or series of connected transactions, out of which the action arose*." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 196 (2d Cir. 2010) (internal quotation marks and citation omitted) (emphasis added). This is no less true because Plaintiff is *pro se*. *See Bey v. City of New York*, 454 F. App'x 1, 5 (2d Cir. 2011) (stating that "res judicata applies to *pro se* plaintiffs"). Although Plaintiff raises a new legal theory in this action, namely that now he sues under a different section of the 2030 Bonds Indenture, he could and should have brought that cause of action in the Second Action.

Plaintiff's claims on the 2030 Bonds and 2030 Bond Indenture are, therefore, precluded by res judicata.[7]

---

[7] Plaintiff cites *Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955), to argue that res judicata does not bar suits that "involve[] the same course of wrongful conduct" if they contain allegations of "new facts" or a "worsening of the earlier conditions." Pl. Opp. at 5. *Lawlor* is inapposite, however, because in that case the court held that res judicata did not apply, because the "conduct presently complained of [in the new action] was all subsequent to the [first] judgment," *Lawlor*, 349 U.S. at 328, not because of some "worsening of [] earlier conditions," Pl. Opp. at 5. Plaintiff here alleges no such conduct subsequent to the Second Action that gives rise to any new rights.

10

B. 2012 Bonds

Plaintiff's claims on the 2012 Bonds and 2012 Bond Indenture are also barred by res judicata because those bonds and their indenture were part of the same transaction or series of transactions in which the 2030 Bonds and their indenture litigated in the Second Action were issued, and Plaintiff could and should have asserted his 2012 Bonds claims in that prior lawsuit. Both sets of bonds were issued on August 23, 2000; both were authorized by the same decree of the President of Ecuador; both were issued pursuant to indentures with the same issuer, trustee, paying agent, transfer agent, and registrar; both were issued for the purpose of helping "finance Ecuador's national debt" by achieving "extensive debt forgiveness and [a] restructuring program that allowed Ecuador to return to international capital markets"; and both sets of bonds are allegedly held by the same authorized brokers in Uruguay. Am. Compl. ¶¶ 1–3, 12; Compl. ¶¶ 8–10, 30–31; *see also* ECF No. 2-1 at 32, 73, 75; ECF No. 2-2 at 17, 60, 62. Therefore, the claims "arise from the same nucleus of operative fact" because they are "related in time, space, origin, or motivation." *Fried v. LVI Servs., Inc.*, 557 F. App'x 61, 64 (2d Cir. 2014) (internal quotation marks and citation omitted).[8]

Moreover, Plaintiff has recognized that his claims on the 2012 Bonds and 2030 Bonds could have been litigated together. He sued on both sets of bonds in the First Action. *Penades I*, ECF No. 1. Although he chose not to assert his claims as to the 2012 Bonds in the Second Action, because he then viewed them as time-barred, Plaintiff still asserted allegations regarding these bonds throughout his Second Action complaint. *See Penades II* Compl. ¶¶ 3, 6–7, 13, 18,

---

[8] Plaintiff's attempt to conceal that fact, by deleting from his amended complaint his original complaint's numerous allegations of the 2012 Bonds and 2030 Bonds' and their Indentures' interconnection, only highlights their relatedness. *See* Compl. ¶¶ 8–10, 30–31. The Court considers the "earlier pleadings as admissions in due course," as evidence of the bonds' relatedness. *Barris v. Hamilton*, No. 96 Civ. 9541, 1999 WL 311813, at *2 (S.D.N.Y. May 17, 1999); *see also Limited, Inc. v. McCrory Corp.*, 683 F. Supp. 387, 395 n.5 (S.D.N.Y. 1988) ("Prior inconsistent pleadings . . . are controvertible, not conclusive, admissions.").

49–50. In doing so, Plaintiff demonstrated his own understanding that the 2012 Bonds and 2030 Bonds and their indentures should be treated as a unit. To the extent Plaintiff had any claims with respect to the 2012 Bonds and 2012 Bond Indenture, they should have been asserted, therefore, in the Second Action, not held in reserve for a third action involving the same bonds. *See Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000) (noting the "well-established rule that a plaintiff cannot avoid the effects of res judicata by 'splitting' his claim into various suits, based on different legal theories"); *Fried*, 557 F. App'x at 64 (explaining that the focus of the res judicata inquiry is "whether the issues *could have been raised* in the [earlier proceeding]," not whether they were "*actually raised*").

Further, Plaintiff's argument that the "2012 and 2030 Bonds are two separate debt instruments which were issued according to two independent trust indentures" is untenable. Pl. Opp. at 8. Plaintiff sued on both the 2012 Bonds and 2030 Bonds and their indentures in the First Action; he made allegations about the 2012 Bonds and 2012 Bond Indenture throughout his Second Action complaint, demonstrating his view that they and the 2030 Bonds should be treated as a unit; and he made binding admissions in his original complaint in this action that the 2012 Bonds and 2030 Bonds and their indentures were part of the same transaction, then attempted to obscure those admissions by deleting them from his amended complaint after Defendant moved to dismiss on res judicata grounds.[9] *See* Am. Compl. ¶¶ 1–3, 12; Compl. ¶¶ 8–10, 30–31; ECF No. 2-1 at 32, 73, 75; ECF No. 2-2 at 17, 60, 62; *Penades II* Compl. ¶¶ 3, 6–7, 13, 18, 49–50. "A party [] cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate

---

[9] "The amendment of a pleading does not make it any the less an admission of the party." *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989).

that version, safe in the belief that the trier of fact will never learn of the change in stories." *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984).

In sum, like his claims regarding the 2030 Bonds, Plaintiff's claims regarding the 2012 Bonds are barred by the Court's affirmed judgment in the Second Action. Accordingly, Plaintiff's claims in this action are barred by res judicata.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED. Because even "a liberal reading of the complaint" does not give "any indication that a valid claim might be stated," the Court denies Plaintiff leave to amend the complaint for a second time. *Cuoco*, 222 F.3d at 112. "The problem with [the complaint's] causes of action is substantive; better pleading will not cure it." *Id.*; *see also Rafter v. Liddle*, 704 F. Supp. 2d 370, 378 (S.D.N.Y. 2010) (holding *pro se* plaintiff's claims barred by res judicata and denying plaintiff leave to amend, where she had "already litigated the essence of her complaint against [d]efendants in two separate actions").

The Clerk of Court is directed to mail a copy of this order to Plaintiff *pro se*, terminate the motion at ECF No. 23, and close the case.

SO ORDERED.

Dated: August 8, 2019
      New York, New York

_____
ANALISA TORRES
United States District Judge